Slip Op. 18-182

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| ZHEJIANG ZHAOFENG MECHANICAL AND ELECTRONIC CO., LTD.,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>THE TIMKEN COMPANY,<br><br>    Defendant-Intervenor. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 18-00004 |

OPINION AND ORDER

[Remanding the U.S. Department of Commerce's determination that Plaintiff was ineligible for separate rate status in the 2015–2016 administrative review of tapered roller bearings and parts thereof from the People's Republic of China.]

Dated: December 27, 2018

Adams C. Lee, Harris Bricken McVay, LLP, of Seattle, WA, argued for Plaintiff Zhejiang Zhaofeng Mechanical and Electronic Co., Ltd.

Kelly A. Krystyniak, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and L. Misha Preheim, Assistant Director. Of counsel was James H. Ahrens II, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

William A. Fennell, Stewart and Stewart, of Washington, D.C., argued for Defendant-Intervenor The Timken Company. With him on the brief was Terence P. Stewart. Geert M. De Prest, Jennifer M. Smith, Lane S. Hurewitz, Nicholas J. Birch, and Patrick J. McDonough also appeared.

Choe-Groves, Judge:  This action arises out of an administrative review of the antidumping duty order on tapered roller bearings from the People's Republic of China ("China").  See Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China, 83 Fed. Reg. 1,238 (Dep't Commerce Jan. 10, 2018) (final results of antidumping duty administrative review, and rescission of new shipper review; 2015–2016) ("Final Results").  Before the court is a Rule 56.2 motion for judgment on the agency record filed by Plaintiff Zhejiang Zhaofeng Mechanical and Electronic Co., Ltd. ("Plaintiff" or "Zhaofeng") contesting the decision of the U.S. Department of Commerce ("Commerce" or "DOC") to revoke Plaintiff's separate rate status.  See Pl.'s Rule 56.2 Mot. J. Agency R., June 29, 2018, ECF No. 30 ("Pl.'s Mot."); see also Mem. P. & A. Supp. Pl. Zhejiang Zhaofeng's Rule 56.2 Mot. J. Agency R., June 29, 2018, ECF No. 32 ("Pl.'s Mem.").  For the following reasons, the court concludes that Commerce's determination is unsupported by substantial evidence and not in accordance with the law.  Plaintiff's Rule 56.2 motion is granted.

## PROCEDURAL HISTORY

Defendant-Intervenor the Timken Company ("Timken") petitioned Commerce for an administrative review of the antidumping duty order on tapered roller bearings from China.  See Petitioner's (Timken's) Pre-Preliminary Comments, PD 181, bar code 3576832-01 (May 31, 2017); see also Tapered Roller Bearings and Parts Theoreof, Finished or Unfinished, From the People's Republic of China, 52 Fed. Reg. 22,667 (Dep't Commerce June 15, 1987) (antidumping duty order).  Commerce initiated an administrative review covering June 1, 2015 through May 31, 2016 for sales of subject merchandise by Chinese producers and exporters.  See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 81 Fed. Reg. 53,121 (Dep't

Commerce Aug. 11, 2016) (initiation notice). Commerce selected Zhaofeng as a replacement mandatory respondent in the administrative review. See Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China, 82 Fed. Reg. 31,301 (Dep't Commerce July 6, 2017) (prelim. results and prelim. rescission of new shipper review; 2015–2016) ("Preliminary Results").

Prior to its selection as a mandatory respondent, Zhaofeng submitted a timely separate rate certification to Commerce from a previous administrative review for tapered roller bearings from China. See Zhaofeng Section A Response, PD 65–67, bar code 3523271-01 (Nov. 17, 2016). Between November 2016 and April 2017, Zhaofeng submitted timely responses to questionnaires issued by Commerce. See Preliminary Results Decision Memo at 3–4, PD 185, bar code 3587281-01 (June 29, 2017) ("Prelim. IDM").

Commerce conducted on-site verification of Zhaofeng's submissions in May 2017, including information on separate rates and sales. See DOC Zhaofeng Verification Report, PD 187, bar code 3588002-01 (June 29, 2017). Commerce noted that Zhaofeng's responses contained no significant omissions, errors, or other issues of concern. See id. After verification, Commerce became aware of irregularities in Zhaofeng's submissions when Timken submitted comments identifying discrepancies in a certain verification exhibit. See Petitioner's (Timken's) Pre-Preliminary Comments at 1–3, PD 181, bar code 3576832-01 (May 31, 2017).

Commerce published its Preliminary Results on July 6, 2017. See Preliminary Results, 82 Fed. Reg. at 31,301. Commerce concluded that Zhaofeng failed to provide a complete and accurate U.S. sales database despite having possessed the records necessary, and it determined that the application of partial AFA was appropriate and warranted. See Prelim. IDM at 14–15.

Separately, Commerce found no evidence of Chinese government ownership of Zhaofeng and that it was otherwise entitled to a separate rate in the review. See id. at 10.

Zhaofeng submitted an administrative case brief pursuant to Commerce's Preliminary Results. See Zhaofeng DOC Case Brief, PD 194, bar code 3604752-01 (Aug. 7, 2017). In its administrative brief, Zhaofeng noted that the sales listing worksheet provided in the verification exhibit in question incorrectly identified certain model numbers, but stated that the worksheet was not part of its official financial record. See id. at 3–4. Zhaofeng argued that the irregularities in its submissions were the result of clerical error, and even so, it did not misreport sales of subject merchandise during the period of review because the verification exhibit involved unreported sales of non-subject merchandise. See id. at 2–4. In response to Zhaofeng's assertion that the examination of the invoice would resolve the matter, Commerce requested the entry package pertaining to the disputed sales from U.S. Customs and Border Protection ("CBP") and received the requested documents, including the associated invoice. See DOC Memo to File: Entry Documents - CBP, PD 202, bar code 3617066-01 (Sept. 7, 2017). Upon reviewing the CBP entry documents, Commerce found further discrepancies in Zhaofeng's submissions. See Final Results Issues & Decisions Memorandum at 7, PD 219, bar code 3657729-01 (Jan. 2, 2018) ("Final IDM").

Commerce issued its Final Results on January 10, 2018. See Final Results, 83 Fed. Reg. at 1,238. In light of the extent and nature of the discrepancies between Zhaofeng's verification materials, U.S. sales listings, and CBP entry documents, Commerce determined that Zhaofeng's submissions were "unreliable in its entirety" and that it could not rely on Zhaofeng's separate rate certification. See id. at 1,239; Final IDM at 6–10. Commerce found that Zhaofeng had

failed to rebut the presumption that it is subject to government control and concluded that Zhaofeng should be assessed at the single, China-wide entity rate of 92.84 percent. See Final Results, 83 Fed. Reg. at 1,239; Final IDM at 10.

Zhaofeng brought this action on January 25, 2018. See Summons, Jan. 25, 2018, ECF No. 1; Complaint, Jan. 25, 2018, ECF No. 2. Zhaofeng filed a Rule 56.2 motion for judgment on the agency record, contesting Commerce's rejection of Zhaofeng's separate rate status. See Pl.'s Mot. Defendant filed a response to Zhaofeng's Rule 56.2 motion. See Def.'s Resp. Opp'n Pl.'s Rule 56.2 Mot. J. Agency R., Sept. 14, 2018, ECF No. 35 ("Def.'s Resp."). Defendant-Intervenor Timken submitted a response in opposition to Plaintiff's Rule 56.2 motion. See Def.-Intervenor Timken's Opp'n Rule 56.2 Mot. J. Agency R., Sept. 17, 2018, ECF No. 40. Zhaofeng submitted a reply brief. See Pl. Zhejiang Zhaofeng's Reply Resp. United States & Timken Zhejiang Zhaofeng's Rule 56.2 Mot. J. Agency R., Oct. 19, 2018, ECF No. 43 ("Pl.'s Reply"). The court held oral argument on December 4, 2018. See Oral Argument, Dec. 4, 2018, ECF No. 54.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2012), and 28 U.S.C. § 1581(c). The court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i).

## ANALYSIS

The single issue before the court is whether Commerce's determination that Zhaofeng was not eligible for a separate rate and subsequent assignment of the China-wide entity rate to Zhaofeng was supported by substantial evidence and in accordance with the law. Plaintiff contests Commerce's denial of its separate rate status as opposed to applying adverse facts available ("AFA") for Commerce's perceived deficiencies in Zhaofeng's sales information. See Pl.'s Mem. 12–14.

Pursuant to the Tariff Act, Commerce has the authority to determine if a country is a nonmarket economy. See 19 U.S.C. § 1677(18); see also Sigma Corp. v. United States, 117 F.3d 1401, 1404–06 (Fed. Cir. 1997). In proceedings involving a nonmarket economy, such as China, there is a rebuttable presumption that all companies within the country are subject to government control and should be assigned a single, country-wide antidumping duty rate. See Sigma Corp, 117 F.3d at 1405. An exporter will receive the country-wide rate by default unless it affirmatively demonstrates that it enjoys both *de jure* and *de facto* independence from the government and receives a separate rate status. See id. The burden of rebutting the presumption of government control rests with the exporter. See id. at 1406. The *de jure* criteria are: (1) an absence of restrictive stipulations associated with an individual exporter's business and export licenses; (2) any legislative enactments decentralizing control of companies; and (3) any other formal measures by the government decentralizing control of companies. See Ad Hoc Shrimp Trade Action Comm. v. United States, 37 CIT __, __, 925 F. Supp. 2d 1315, 1320 n. 21 (2013); see also Sparklers From the People's Republic of China, 56 Fed. Reg. 20,588, 20,589 (Dep't Commerce May 6, 1991) (final determination of sales at less than fair value). The *de facto*

criteria are: (1) whether the export prices are set by or are subject to the approval of a government authority; (2) whether the respondent has authority to negotiate and sign contracts and other agreements; (3) whether the respondent has autonomy from the government in making decisions regarding the selection of management; and (4) whether the respondent retains the proceeds of its export sales and makes independent decisions regarding disposition of profits or financing of losses.  See Ad Hoc Shrimp Trade Comm., 925 F. Supp. 2d at 1320 n. 21; see also Silicon Carbide from the People's Republic of China, 59 Fed. Reg. 22,585, 22,587 (Dep't Commerce May 2, 1994) (notice of final determination of sales at less than fair value).

Commerce may not disregard a respondent's separate rate information as "tainted" just because there were deficiencies in the respondent's sales or factors of production data.  See Shenzen Xinboda Indus. Co., Ltd. v. United States, 40 CIT __, __, 180 F. Supp. 3d 1305, 1316 (2016) (citing Foshan Shunde Yongjian Housewares & Hardware Co. v. United States, 35 CIT 1398, 1418 (2011)); see also Fresh Garlic Producers Ass'n v. United States, 39 CIT __, __, 121 F. Supp. 3d 1313, 1328 (2015) ("Commerce cannot ignore a party's separate rate information solely because it selects total AFA due to defects related to sales data.").

Defendant United States contends that Commerce's decision to deny Zhaofeng separate rate status is in accordance with the law because the U.S. Court of Appeals for the Federal Circuit "affirmed Commerce's finding that an exporter's misrepresentations could impeach the entire credibility of its submissions, including its separate rate certification, even where the misrepresentations themselves did not directly relate to *de facto* control" in Ad Hoc Shrimp Trade Action Committee v. United States, 802 F.3d 1339 (Fed. Cir. 2015).  Def.'s Resp. 16. Defendant relies on the language in Ad Hoc Shrimp that the "misrepresentations may reasonably

be inferred to pervade the data in the record *beyond that which Commerce has positively confirmed as misrepresented*." Def.'s Resp. 17 (quoting Ad Hoc Shrimp, 802 F.3d at 1347, and adding emphasis). The court disagrees with Defendant's overbroad interpretation of the Ad Hoc Shrimp case. The U.S. Court of Appeals for the Federal Circuit upheld Commerce's denial of separate rate status in Ad Hoc Shrimp because the respondent's deficiencies and inconsistencies specifically related to whether the company at issue had affiliates in nonmarket economy countries, which related to the ownership and control of the company at issue. See Ad Hoc Shrimp, 802 F.3d at 1358. The company's corporate structure in Ad Hoc Shrimp directly implicated the *de facto* criteria for separate rate status. The language on which Defendant relies for the proposition that the "misrepresentations may reasonably be inferred to pervade the data in the record" appears in the section regarding Commerce's AFA determination and cannot be imported into the separate rate analysis. See id. at 1357. In the instant case, Zhaofeng's misrepresentations relate only to the reporting of sales data. See Final IDM at 6. Because Zhaofeng's misrepresentations do not speak directly to Zhaofeng's corporate structure or to the *de facto* control of the company, the misrepresentations cannot and should not be inferred to pervade the separate rate analysis. The court concludes that Defendant's attempts to analogize this case with Ad Hoc Shrimp are unpersuasive.

The separate rate analysis is separate and distinct from the selection of an AFA rate. Shenzen Xinboda, 40 CIT at __, 180 F. Supp. 3d at 1315; see also Nat'l Nail Corp. v. United States, 42 CIT __, __, 279 F. Supp. 3d 1372, 1379 (2018) (stating that Commerce cannot assign the China-wide rate based on the finding that a company's responses regarding factors of production and sales data were unreliable when there is nothing on the record to suggest that the

company was untruthful when answering questions relating to government control).[1]  Section 1677e provides that if necessary information is not available on the record or if a respondent fails to provide such information by the deadline for submission of the information or in the form and manner requested, then the agency shall use the facts otherwise available in reaching its determination.  19 U.S.C. § 1677e(a)(1), (a)(2)(B).  Commerce has the authority to determine if a country is a non-market economy pursuant to a completely different statutory provision.  See id. § 1677(18).  Commerce's practice of determining separate rate eligibility is derived from section 1677.  Commerce developed its practice of determining separate rate eligibility based on *de facto* and *de jure* independence criteria.  See Sigma Corp, 117 F.3d at 1405.  Because the AFA analysis and separate rate analysis are distinct statutory evaluations, the two analyses cannot be conflated.  The court concludes that Commerce's decision to deny Zhaofeng separate rate status is not in accordance with the law.

      Defendant contends that Commerce's decision to deny Zhaofeng's separate rate status was supported by substantial evidence because of multiple instances of misreporting and misconduct by Zhaofeng stemming from Zhaofeng's March 2016 quantity and value reconciliation and its U.S. sales listing.  See Def's Resp. 13.  Commerce did not adequately explain how this misconduct related to its separate rate analysis in the underlying administrative review.  Commerce stated that Zhaofeng cannot meet the *de facto* criteria because "under

---

[1] Defendant argues that Shenzen Xinboda and National Nail Corporation are distinguishable because the two cases do not comport with Ad Hoc Shrimp.  See Def.'s Resp. 18–19 & n. 3.  As discussed above, the court disagrees with Defendant's reading of Ad Hoc Shrimp and reiterates that the proposition that "misrepresentations may reasonably be inferred to pervade the data in the record" appears in the section regarding Commerce's AFA determination and cannot be imported into the separate rate analysis.  See Ad Hoc Shrimp, 802 F.3d at 1357.

Case 1:18-cv-00004-JCG Document 55 Filed 12/27/18 Page 10 of 11

Commerce's *de facto* separate rates analysis, <u>all</u> of the *de facto* criteria can be, in some way or another, supported (or refuted) by data recorded in the company's accounting system." Final IDM at 9.  Commerce explained that Zhaofeng's accounting system also affected the *de jure* criteria.  <u>See</u> <u>id.</u> at 9–10.  This is an overly broad conclusion.  Because it is not clear which of the *de facto* and *de jure* criteria are affected by Zhaofeng's misreporting in its March 2016 quantity and value reconciliation report, the court concludes that Commerce's decision to deny Zhaofeng separate rate status is not supported by substantial evidence.

## CONCLUSION

For the aforementioned reasons, the court concludes that Commerce's decision to deny Zhaofeng separate rate status is not in accordance with the law and not supported by substantial evidence.  The court remands the <u>Final Results</u> for redetermination on the issue of Zhaofeng's separate rate consistent with this opinion.  Accordingly, it is hereby

**ORDERED** that Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record is granted; and it is further

**ORDERED** that Commerce shall file its remand redetermination on or before March 28, 2019; and it is further

**ORDERED** that Commerce shall file the administrative record on remand on or before April 11, 2019; and it is further

**ORDERED** that the Parties shall file any comments on the remand redetermination on or before May 13, 2019; and it is further

**ORDERED** that the Parties shall file replies to the comments on or before June 12, 2019; and it is further

**ORDERED** that the joint appendix shall be filed on or before June 26, 2019.

                                                                           /s/ Jennifer Choe-Groves
                                                                            Jennifer Choe-Groves, Judge

Dated: December 27, 2018
           New York, New York