Slip Op 19-167

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ZHEJIANG ZHAOFENG MECHANICAL AND ELECTRONIC CO., LTD.,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>THE TIMKEN COMPANY,<br><br>    Defendant-Intervenor. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 18-00004 |

OPINION

[Sustaining the U.S. Department of Commerce's Remand Results.]

Dated: December 18, 2019

Adams C. Lee, Harris Bricken McVay Sliwoski, LLP, of Seattle, WA, for Plaintiff Zhejiang Zhaofeng Mechanical and Electronic Co., Ltd.

Kelly A. Krystyniak, Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and L. Misha Preheim, Assistant Director.  Of counsel was James H. Ahrens, II, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Geert M. De Prest, Schagrin Associates, of Washington, D.C., and William A. Fennell, Stewart and Stewart, of Washington, D.C., for Defendant-Intervenor The Timken Company.  With them on the briefs were Terence P. Stewart, Patrick J. McDonough, Lane S. Hurewitz, and Shahrzad Noorbaloochi.  Nicholas J. Birch also appeared.

Choe-Groves, Judge: This action arises from the U.S. Department of Commerce's ("Commerce") administrative review of the antidumping order on tapered roller bearings from the People's Republic of China. Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China, 83 Fed. Reg. 1,238 (Dep't Commerce Jan. 10, 2018) (final results of antidumping duty administrative review and rescission of new shipper review; 2015–2016) ("Final Results"). Before the court are the Final Results of Redetermination Pursuant to Court Remand, April 25, 2019, ECF No. 58 ("Remand Results"). For the following reasons, the court sustains the Remand Results.

## ISSUES PRESENTED

The court reviews the following issues:

1. Whether Commerce's determination to grant Zhaofeng a separate rate is supported by substantial evidence; and

2. Whether Commerce's decision to use an inference adverse to the interests of Zhaofeng in selecting from facts otherwise available is supported by substantial evidence and is in accordance with the law.

## BACKGROUND

The court presumes familiarity with the facts and procedural history and discusses only those facts relevant to the review of the Remand Results. Zhejiang Zhaofeng Mech. and Elec. Co., Ltd., v. United States, 42 CIT __, 355 F. Supp. 3d 1329 (2018) ("Zhaofeng I").

In the underlying administrative proceeding, Commerce became aware of irregularities in Zhaofeng's submissions when The Timken Company ("Timken" or "Defendant-Intervenor") submitted comments identifying discrepancies in a verification exhibit. Pet'r's Pre-Preliminary Cmts. 1–3, PD 181, bar code 3576832-01 (May 31, 2019). Zhaofeng acknowledged the

discrepancies, but averred that they were the result of clerical errors and that a review of Zhaofeng's U.S. sales invoice would resolve the discrepancies. Remand Results at 3 & nn.6–7 (citing Zhaofeng's Case Br. 3–4, PD 184, bar code 3604752-01 (Aug. 17, 2017)); see also Zhaofeng Cmts. at 4.  Commerce obtained the corresponding entry documentation from U.S. Customs and Border Protection ("CBP") and set a schedule for submitting rebuttal factual information.  Remand Results at 3; see also Entry Documents Placed on the Record, Opportunity to Submit Rebuttal Factual Information and Final Date for Rebuttal Br., bar code 3617066-01 (Sept. 7, 2017).  When Commerce compared the entry documents to Zhaofeng's verification exhibit, Commerce identified several differences, including that "the number of line items, all product codes, and most individual quantities did not match," although "the invoice number, customer name, and total sales value were the same for each set of records." Remand Results at 3–4 & n.8; see also Final Analysis Mem., bar code 3659982-01 (Jan. 2, 2018) ("Final Analysis Mem.") (comparing Zhaofeng's verification exhibit with the invoice filed by the importer).

In Zhaofeng I, the court concluded that Commerce could not disregard a respondent's separate rate information as "tainted" just because there were deficiencies in the respondent's sales or factors of production data. 42 CIT at __, 355 F. Supp. 3d at 1333–34.  The court remanded to Commerce for reconsideration of Zhaofeng's separate rate status. Id. at 1335.

On remand, Commerce granted Zhaofeng a separate rate. Remand Results at 5.  In determining Zhaofeng's dumping margin, Commerce reassessed the discrepancies between Zhaofeng's reconciliation worksheet and the invoice in the entry documents. See id. at 2–4, 6–22.  In addition to the differences in the identification of goods as subject merchandise or non-subject merchandise, Commerce noted that the invoice in the entry documents contained a greater number of product codes and pieces, but the invoice reflected the same total value that

was reported in the corresponding verification exhibit.  Id. at 7.  Commerce recognized that the discrepancies involved a single sale, but assessed that the sale represented a significant quantity and value relative to Zhaofeng's reported sales of subject merchandise.  Id. at 2–4, 7, n. 20.  As a result, Commerce found that "Zhaofeng withheld information from Commerce, . . . failed to provide information in the form and manner requested, by failing to report a significant quantity of its U.S. sales, . . . that Zhaofeng significantly impeded the proceeding by withholding sales information and misleading Commerce at verification, and then by providing additional false information to dismiss the inconsistencies found subsequent to verification."  Id. at 8.  Because Commerce determined that Zhaofeng failed to cooperate to the best of its ability, Commerce calculated a rate using an adverse inference to facts otherwise available ("adverse facts available" or "AFA").  Id. at 9; 19 U.S.C. § 1677e.  Commerce assigned Zhaofeng a dumping margin of 92.84 percent, which was the AFA rate previously assigned in the June 1, 2006 through May 31, 2007 review of this proceeding.  Remand Results at 10; see Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China, 74 F.R. 3,987, 3,988–89 (Dep't Commerce Jan. 22, 2009) (final results of antidumping duty administrative review).

      Timken filed comments in support of the Remand Results.  Timken's Cmts. on Final Results of Redetermination Pursuant to Court Remand, May 13, 2019, ECF No. 62 ("Timken Cmts.").  Zhaofeng filed comments in opposition.  Pl.'s Reply Cmts. on DOC Remand Redetermination, June 10, 2019, ECF No. 63 ("Zhaofeng Cmts.").  Defendant and Timken filed reply comments.  Def.'s Resp. to Pl.'s Cmts. on Remand Redetermination, Aug. 5, 2019, ECF No. 79 ("Def.'s Resp."); Reply Br. of Def.-Intervenor Timken, Aug. 5, 2019, ECF No. 80.  The Parties filed a joint appendix.  J.A., Aug. 19, 2019, ECF No. 84.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012) and 28 U.S.C. § 1581(c). The court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i).

## ANALYSIS

### I. Commerce's Decision to Grant Zhaofeng Separate Rate Status

On remand, Commerce granted Zhaofeng a separate rate. See Remand Results at 5. The Parties do not contest Commerce's grant of a separate rate to Zhaofeng. Zhaofeng Cmts. at 2; Def.'s Resp. at 3; Timken Cmts. at 2. Because Commerce examined Zhaofeng's information and determined that it satisfied the *de jure* and *de facto* criteria to obtain a separate rate, the court sustains the Remand Results as to Zhaofeng's separate rate status. See Remand Results at 5.

### II. Commerce's Application of Adverse Facts Available to Zhaofeng

If an interested party: (1) "withholds information that has been requested," (2) "fails to provide such information by the deadlines for submission of the information or in the form and manner requested," (3) "significantly impedes a proceeding," or (4) "provides such information but the information cannot be verified," then Commerce may rely on facts otherwise available. 19 U.S.C. § 1677e(a)(2)(A)–(D). If a party fails to cooperate to the best of its ability, Commerce may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available. 19 U.S.C. § 1677e(b).

The U.S. Court of Appeals for the Federal Circuit has interpreted 19 U.S.C. § 1677e subsections (a) and (b) to have different purposes. See Mueller Comercial de Mexico, S. de R.L. De C.V. v. United States, 753 F.3d 1227, 1232 (Fed. Cir. 2014); 19 U.S.C. § 1677e(a)–(b).

Subsection (a) applies "whether or not any party has failed to cooperate fully with the agency in its inquiry." Mueller, 753 F.3d at 1232. Subsection (b) applies only when Commerce makes a separate determination that the respondent failed to cooperate "by not acting to the best of its ability." Id. A party fails to cooperate to the best of its ability when it does not "conduct prompt, careful, and comprehensive investigations of all relevant records that refer or relate to the imports in question to the full extent of [its] ability to do so." Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003) (noting that "intentional conduct, such as deliberate concealment or inaccurate reporting . . . evinces a failure to cooperate."); see also Essar Steel Ltd. v. United States, 678 F.3d 1268, 1276 (Fed. Cir. 2012). When making an adverse inference, Commerce may rely on information derived from the petition, a final determination in the investigation, a previous administrative review, or any other information placed on the record. See 19 U.S.C. § 1677e(b)(2); 19 C.F.R. § 351.308(c).

### A. Application of Facts Available

First, Zhaofeng argues that the record does not support application of facts available. Zhaofeng contends, *inter alia*, that the sale involved non-subject merchandise, that Zhaofeng's information is consistent with Commerce's verification, and that Commerce cannot identify discrepancies in other transactions.[1] Zhaofeng's Cmts. at 5–15. Second, Zhaofeng contends that: (1) Commerce cannot show that Zhaofeng withheld any information, (2) Commerce did not explain how Zhaofeng failed to provide timely information or in the form and manner requested,

---

[1] Plaintiff's reliance on Zhaofeng's verification is misplaced, as the verification occurred before the discovery of the discrepancies. Micron Tech. v. United States, 117 F.3d 1386, 1396 (Fed. Cir. 1997) ("Verification is a spot check and is not intended to be an exhaustive examination of a respondent's business." (internal citation omitted)); 19 U.S.C. § 1677m(i); 19 C.F.R. § 351.307–351.308.

(3) that Zhaofeng did not significantly impede the investigation, and (4) that Zhaofeng provided verifiable information. Id. at 16–18.

Defendant counters that Zhaofeng's verification and CBP entry documents contained inconsistencies, that Zhaofeng did not adequately explain its discrepancies, and that Zhaofeng did not supplement the record to show that issues raised by the transaction were an isolated occurrence. Def.'s Resp. at 14–16. Timken adds that Zhaofeng's transaction contained other discrepancies beyond the reporting of subject and non-subject merchandise, including that the quantity and line items in Zhaofeng's CBP entry documents were inconsistent with Zhaofeng's sales reconciliation worksheet. Timken Cmts. at 5–6.

Plaintiff's arguments are not persuasive. Commerce identified differences between Zhaofeng's sales verification worksheet and the corresponding CBP entry documents as to the number of line items, product codes, and individual quantities identified in the respective documents. Remand Results at 6–7 & nn. 18–20; see also Final Analysis Mem. at 4. Even if, as Zhaofeng contends, "the sales verification worksheet correctly identified this sale as a non-subject sale even though the line item product codes [were] incorrectly identified for this transaction," Zhaofeng's explanation does not resolve how the sales totals between the documents match despite differences in quantity and line items. See Zhaofeng's Cmts. at 6. Because the sales reconciliation was a critical link between Zhaofeng's sales of subject merchandise and Zhaofeng's accounting records, Commerce could conclude reasonably that Zhaofeng's sales database was unreliable.

Based on the identified discrepancies in the record, Commerce found that Zhaofeng withheld information and failed to provide information in the form and manner requested "by failing to report a significant quantity of its U.S. sales," and that "Zhaofeng significantly

impeded the proceeding by withholding sales information and misleading Commerce at verification." Remand Results at 8 (citing 19 U.S.C. § 1677e(a)(2)(A)–(C)). The court concludes that Commerce's findings under 19 U.S.C. § 1677e(a) were supported by substantial evidence.

### B. Application of Adverse Facts Available

Plaintiff argues that the record does not support the application of AFA[2] and that Commerce's application of AFA was not in accordance with the law because Commerce may not apply total AFA if Zhaofeng would not have received a benefit by submitting an inaccurate verifications sales reconciliation worksheet.[3] Zhaofeng's Cmts. at 2, 18–20; see also Statement of Administrative Action at 870, H.R. Rep. 103–316, reprinted in 1994 U.S.C.C.A.N. 4040, 4199 ("SAA"). Defendant avers that Commerce's Remand Results are supported by substantial evidence and are in accordance with the law. Defendant also responds that the benefit inquiry focuses on the significance of the issues and whether a correction is available, not whether a benefit would have been received. Def.'s Resp. at 18.

Plaintiff's arguments lack merit. First, when applying AFA, Commerce assessed that the discrepancies undermined the credibility of Zhaofeng's U.S. sales database. Remand Results at 25–26; Final Analysis Mem. at 1–2. Because Commerce identified discrepancies in the sales reconciliation, and the sales reconciliation was an important link between Zhaofeng's sales of subject merchandise and Zhaofeng's accounting records, Commerce could reasonably draw an inference that Zhaofeng's U.S. sales database was not credible. See Ad Hoc Shrimp Trade

---

[2] Zhaofeng also contends that the record does not support application of neutral or partial facts available. Zhaofeng's Cmts. at 5.

[3] Zhaofeng further argues that Commerce's application of AFA was arbitrary. Plaintiff misapprehends the standard of review for this action. Compare 19 U.S.C. § 1516a(b)(1)(A) with 19 U.S.C. § 1516a(b)(1)(B)(i).

Action Comm. v. United States, 802 F.3d 1339, 1357 (Fed. Cir. 2015) (noting that "misrepresentations may reasonably be inferred to pervade the data in the record beyond that which Commerce has positively confirmed as misrepresented" (internal quotation marks omitted)).

Second, as to benefit, Commerce may apply AFA if a respondent does not cooperate "to the best of [its] ability, regardless of motivation or intent." Nippon Steel Corp., 337 F.3d at 1383. This standard "does not require perfection and recognizes that mistakes sometimes occur," but "it does not condone inattentiveness, carelessness, or inadequate record keeping." Papierfabrik August Koehler SE v. United States, 843 F.3d 1373, 1379 (Fed. Cir. 2016) (quoting Nippon Steel Corp., 337 F.3d at 1382). In this case, Commerce addressed the issue of benefit and found that Zhaofeng sought to "mislead Commerce and conceal multiple sales of subject merchandise." Remand Results at 25; see also SAA at 4199. This finding was supported by the discrepancies in the sales reconciliation, including the identification of a previously unnamed U.S. customer and a different quantity of merchandise for sale at issue. Remand Results at 25–26.

On remand, Commerce assigned Zhaofeng a dumping margin of 92.84 percent. Id. at 10. Under 19 U.S.C. § 1677e(d), if Commerce uses an inference that is adverse to the interests of a party under 19 U.S.C. § 1677e(b)(1)(A) in selecting among the facts otherwise available, then Commerce may use a dumping margin from any segment of the proceeding under the antidumping order. 19 U.S.C. § 1677e(d)(1)(B). Because Commerce assigned Zhaofeng the same AFA rate previously assigned in the June 1, 2006 through May 31, 2007 review of this proceeding, Commerce's determination of Zhaofeng's dumping margin is in accordance with the

law.  see id.; Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China, 74 F.R. at 3,988–89.

Because Commerce could conclude reasonably that Zhaofeng failed to act to the best of its ability, Commerce could apply AFA in this action.  See Papierfabrik August Koehler SE v. United States, 843 F.3d at 1379.  For these reasons, the court concludes that Commerce's decision to apply AFA was supported by substantial evidence and is in accordance with the law.

## CONCLUSION

For the foregoing reasons, the court sustains Commerce's Remand Results.  Judgment will be entered accordingly.

                                                     /s/ Jennifer Choe-Groves
                                                 Jennifer Choe-Groves, Judge

Dated:   December 18, 2019
          New York, New York